UNITED STATES DISTRICT COURT APR 27  PM 4: 47
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
(**IN ADMIRALTY AND AT LAW**)

| | |
|---|---|
| MARIA BRIEM and TORSTEN BRIEM, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No.: |
| ) | 2:18-cv-301-FtM-99CM |
| HOLIDAY WATER SPORTS FT MYERS ) | |
| BEACH, INC. a/k/a HOLIDAY WATER ) | |
| SPORTS OF FORT MYERS BEACH, INC., ) | |
| ) | |
| Defendant in Admiralty, ) | |
| ) | |
| And ) | |
| ) | |
| TOUR GUIDE LEADER "JACK", ) | |
| individually, ) | |
| ) | |
| Defendant at Law. ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, through undersigned counsel, sue

Defendants, HOLIDAY WATER SPORTS FT MYERS BEACH, INC. a/k/a HOLIDAY WATER

SPORTS OF FORT MYERS BEACH, INC., under the general maritime law and TOUR GUIDE

LEADER "JACK", individually, under state law, and for their Complaint allege and aver the

following:

## JURISDICTION, PARTIES, AND VENUE

1.     Plaintiffs bring this Complaint in the form of a "hybrid admiralty-civil case"

alleging maritime claims against Defendant, HOLIDAY WATER SPORTS FT MYERS BEACH,

INC. a/k/a HOLIDAY WATER SPORTS OF FORT MYERS BEACH, INC. (hereinafter referred

1

to as "Holiday Water Sports"), under the Court's original subject matter jurisdiction when sitting in Admiralty, and alleging an independent state law claim against the other Defendant, TOUR GUIDE LEADER "JACK" (hereinafter referred to as "the Tour Guide, Jack"), whose full name has not yet been identified, under the Court's original subject matter jurisdiction conferred by diversity of citizenship of the parties, as set forth in detail below.

2.      Original subject matter jurisdiction is conferred in Admiralty against Defendant, Holiday Water Sports, pursuant to 28 U.S.C §1333, for violations of maritime vessel safety laws which impose statutory duties governing the safe livery (rental) of vessels and general maritime negligence, which Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, elect to designate as admiralty or maritime claims under Rule 9(h) of the Federal Rules of Civil Procedure.

3.      Original subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332 for the breach of contract and general negligence claims under Florida law against the Defendant, the Tour Guide, Jack, based upon the diversity of citizenship of the parties and the amount in controversy as set forth herein, and against whom the Briems elect to litigate at law for negligence under Florida law.

4.      As it relates to the diversity claim, the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of a foreign state and citizens of a territorial state of the United States, thereby establishing original jurisdiction pursuant to 28 U.S.C. § 1332.

5.      Plaintiff, MARIA BRIEM (hereinafter "Mrs. Briem" or collectively "the Briems"), is suis juris and resides within and is a citizen of the Federal Republic of Germany.

6.      Plaintiff, TORSTEN BRIEM (hereinafter "Mr. Briem" or collectively "the Briems"), is suis juris and the husband of Maria Briem, and also resides within and is a citizen of

2

the Federal Republic of Germany.

7.     Defendant at law, the Tour Guide, Jack, is suis juris and is believed to be a resident of the State of Florida and of the United States, and was, on April 27, 2015, upon information and belief, an employee of Holiday Water Sports, and a personal watercraft tour guide who was assigned to take Mr. and Mrs. Briem on a "guided" dolphin tour via a personal watercraft called a "Waverunner."

8.     Defendant in Admiralty, Holiday Water Sports, is a Florida corporation with its principal place of business located at 200 Estero Blvd., Ft. Myers Beach, Florida 33931, engaged in the business of livery of watercraft for use in the coastal waters off of the state of Florida.

9.     The claims in admiralty and at law against Holiday Water Sports and the claims at law against the Tour Guide, Jack, are, thus, each against different named defendants, each of whom are alleged to have contributed to liability through different conduct. Nevertheless, the claims of Mr. and Mrs. Briem, in admiralty against Holiday Water Sports and at law against the Tour Guide, Jack, all arise from the same boating or watercraft accident on April 27, 2015, and resulted in the same personal injuries to Mrs. Briem and loss of consortium to Mr. Briem, and may therefore be brought in one civil action, with all claims tried by jury.

10.     Both defendants at all relevant times conducted and, upon information and belief, continue to regularly conduct business or reside in Florida, thereby subjecting themselves to the personal jurisdiction of this Court.

11.     Venue is proper, pursuant to 28 U.S.C. §1391, in the Middle District of Florida, Fort Myers Division, as a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## FACTUAL ALLEGATIONS

12.     At all relevant times, the Plaintiffs, Mr. and Mrs. Briem, were tourists from Germany, who planned to visit multiple locations on an extended vacation to the United States. They were accompanied by their friends, Dennis and Cornelia Dijkstra (collectively "the Dijkstras") on this trip.

13.     The Briems and the Dijkstras arrived in New York on April 12, 2015, and they rented a vehicle in order to drive from New York down the coast, making stops along the way, intending to return to Germany from Miami, Florida on May 1, 2015.

14.     One of the stops that the Briems and Dijkstras had planned was to occur in Fort Myers Beach, Florida, where they wanted to rent personal watercraft called "Waverunners" and participate in a guided "dolphin tour." They rented Waverunners from Holiday Water Sports, and, because Mr. Briem had only been on a jet ski for 10 minutes on one prior occasion and Mrs. Briem had no experience with Waverunners, they paid an added fee for a guided tour, which Holiday Water Sports offered and advertised on their website.

15.     Initially, the two couples had booked and paid for the dolphin tour through Holiday Water Sports to occur on April 26, 2015, which was to take place in the open waters of the ocean. However, Holiday Water Sports determined that the tour could not be taken at all that day due to rough sea conditions. Consequently, they returned the following day, i.e., April 27, 2015.

16.     The Waverunners are capable of carrying two individuals each, so Maria Briem was to ride on the back of the Waverunner piloted by Mr. Briem, while the Dijkstras both rode on a second Waverunner. The Tour Guide, Jack, would ride on a third Waverunner, and they would rely upon him to guide them safely throughout the tour. The Briems had specifically chosen and contracted for the guided tour option.

4

17.    On April 27, 2015, the Briems and Dijkstras were told by the Defendants that due to inclement weather and high waves, they still could not traverse the normal route used to view the dolphins in the open ocean, but would have to take an alternative route that would present calmer waters. The alternative route involved the tour guide taking them through the nearby canals, and they were told that they would also be able to see dolphins in the canals.

18.    By law, Holiday Water Sports, as the livery company for these Waverunners, was required to provide certain pre-rental or pre-ride instructions, as set forth in section 327.54 of the Florida Statutes, which included the safe and proper operation of the Waverunner and education on the local characteristics of the waterways where the vessels would be operating. Where such instruction is not carried out and/or not carried out properly or adequately, a violation of this statute constitutes negligence per se, as set forth *infra*.

19.    In this instance, the only training provided by Holiday Water Sports to the Briems, as inexperienced participants, consisted solely of instructing them concerning the manner in which to brake and accelerate the Waverunner; no further training was provided.  Certainly, no attempt was made to educate or inform the couples further as to other operational characteristics of the Waverunner or its safe operation or with respect to the local characteristics of the waterways, which was of an even greater concern considering the weather conditions, as acknowledged by Holiday Water Sports.

20.    Moreover, the Briems, as German nationals, possessed limited English-speaking skills, including limitations on their ability to read and comprehend materials written in the English language.

21.    The Briems and their friends followed the Tour Guide, Jack, who had been assigned to take them on a completely guided tour, which proceeded through the canals. When the tour was

nearly over, the Tour Guide, Jack, told them that for the remaining 15 minutes of the tour, they could ride alone into the open ocean and make their own way back.

22.     The Briems were concerned and asked the Tour Guide, Jack, if this was not too dangerous and even reminded him that they had contracted for him to remain with them for the entire tour. The guide assured the couples that it would be no problem and left, despite the prior issues related to the rough seas, the need to redirect the tour from the open waters of the ocean to the canals, and the inexperience of these riders. In fact, the Tour Guide, Jack, offered no warnings or concerns about their continued use of the Waverunners under inclement conditions.

23.     After being reassured, the Briems began to ride the Waverunner into the ocean and, within circa two (2) minutes following the Tour Guide, Jack's departure, they were hit by a huge wave that knocked Mrs. Briem off the back of the Waverunner.

24.     Unfortunately, there was no one in the vicinity from Holiday Water Sports to provide help, as the Tour Guide, Jack, had abandoned them on the open water. With great effort, Mr. Briem managed to get his wife back onto the back of the Waverunner. Mrs. Briem was obviously injured and in pain. When they returned to the beach, they had to carry Mrs. Briem to the car.

25.     Mrs. Briem was taken to the Healthpark Medical Center in Fort Myers immediately following the accident. There, a medical and radiographic examination was carried out. Imaging revealed fractures involving the distal tibia and fibula. The attending physician noted a lateral malleolus fracture and a distal tibial fracture with intraarticular extension involving the posterior malleolus.

26.     Mrs. Briem received emergency surgery with a closed reduction and attachment of an external fixator. The procedure itself and the postoperative treatment went without

6

complications, and on April 29, 2015, Mrs. Briem was discharged from inpatient treatment, so she could return to Germany with her husband on their scheduled flight of May 1, 2015.

27.     Mrs. Briem's ankle problems, however, were far from resolved. After her return to Germany, Mrs. Briem again received inpatient treatment in Cologne-Merheim Hospital, from May 2, 2015 until May 13, 2015. The German physicians performed a second operation on May 6, 2015, involving the removal of the external fixator.

28.     The German physicians performed an open reduction of the fracture with plate osteosynthesis of the distal fibula with interfragmentary lag screw fixation of the medial malleolus and Volkmann triangle. Mrs. Briem was able to be discharged on May 13, 2015, but the assessment remained that she had sustained a trimalleolar ankle fracture.

29.     Mrs. Briem then received outpatient care at the Merheim Hospital, which included physiotherapy training under supervision. Mrs. Briem also had to receive a thrombosis prophylaxis because of the dangers posed.

30.     The screw that had been placed in the procedure of May 6, 2015 was removed on June 17, 2015 at the Merheim Hospital. Further outpatient care was provided by the resident surgeons in Bergheim. Mrs. Briem continued, however, to complain of persistent, significant stress-related pain in the right ankle.

31.     Due to this persistent and increasing pain, her German physicians decided to remove the hardware surgically from Mrs. Briem's ankle, which occurred on October 26, 2015. Removal of the interfragmentary lag screw occurred first, followed by the plate and five additional screws; next, the surgeons removed the screw fixed in the medial malleolus and then the screw fixed in the Volkmann triangle.

32.     Due to continued above-average pain in the ankle, the treating physicians arranged a computed tomography of the right ankle joint on November 18, 2015. The results of this tomography assessment state, translated from the German: "Condition after fracture of the rear Volkmann triangle. An incongruity of 1.5 mm is present in the articular surface of the upper ankle joint. Upper ankle joint osteoarthritis is present with ventral tibial osteophytes and small dorsal osteophytes on the talus dome. High-grade narrowing of the joint space ventrally."

33.     Mrs. Briem received physical therapy from December 2, 2015 through January 27, 2016. The therapy report reflects that some mobility and stability of the foot had been regained, but there remained limitations in dorsiflexion. The fact that osteoarthritis had already occurred meant that Mrs. Briem would forever have significantly reduced load bearing capacity of the right leg according to her German doctors.

34.     This condition also affects her gait, giving her a clear limp, or an antalgic gait, which her German doctors assess will be a permanent condition.

35.     Mrs. Briem has since continued to complain of constant pain in the right ankle, especially following activity or weight-bearing but even at times of rest. The level of mobility in the right ankle is severely limited, and the level of strength is markedly reduced. Mrs. Briem has continued to complain of swelling, particularly when weight-bearing, and she has reported additional pain with a change in the weather.

36.     Obviously, Mrs. Briem's right ankle evidences multiple scars from the surgeries. The limitations to the functionality of Mrs. Briem's upper ankle joint are determined to be permanent in nature.

37.     It is clear from the foregoing that Mrs. Briem suffered severe, permanent and debilitating bodily injury to her ankle and ongoing pain and suffering. Her doctors state that her

8

condition is permanent, and she will forever have a limp.

38.    Mrs. Briem further continues to suffer mental anguish and humiliation at her job. She works as a corporate client advisor at the Sparkasse, a German local savings bank. Since the accident she is still in constant pain in her right ankle. As a professional banker, she can no longer wear the appropriate clothes and heels expected for someone in her position, making her feel awkward at work, limping in front of clients.

39.    Mrs. Briem also suffers the loss of enjoyment of physical activities she used to enjoy in life, as she was once a very active young woman. These include: 1) jogging two (2) – three (3) times per week; 2) cycling and badminton, in which she used to engage at least once per week, sometimes even biking on a competitive basis; 3) swimming, in which she used to engage every couple of weeks for exercise; 4) handball and tennis, which she used to enjoy once per month as part of an amateur team; and 5) skiing, which she used to enjoy a couple of times per year on vacation.

40.    As shown above, Mrs. Briem has undergone substantial medical treatment and procedures, for which she is entitled to compensation. The Briems also lost the enjoyment and value of their vacation to the United States, as Mrs. Briem spent the remainder of her trip in the hospital.

41.    Finally, Mr. Briem is also entitled to damages for loss of consortium. Not only can he no longer enjoy the physical activities that he and his wife used to enjoy, but his wife is in constant pain and discomfort, which is damaging to their relationship from an emotional point of view.

42.     Thus, it is clearly evident from the foregoing allegations that the damages involved are prima facie sufficient to substantiate that the amount in controversy significantly exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## COUNT I

### NEGLIGENCE PER SE BY HOLIDAY WATER SPORTS FOR VIOLATIONS OF MARITIME VESSEL SAFETY LAWS WHICH IMPOSE STATUTORY DUTIES GOVERNING THE SAFE LIVERY (RENTAL) OF VESSELS

43.     Paragraphs 1 through 42 are realleged as though fully set forth herein.

44.     Holiday Water Sports at all relevant time was engaged in the livery of watercraft for use in the coastal waters of the ocean off of the state of Florida. These are clearly considered navigable waters, and this recreational vessel business has a clear nexus or connection to traditional maritime activity.

45.     The Briems have elected to plead their claims as against Holiday Water Sports under Rule 9(h), including this Count, designating them as admiralty or maritime claims under the Federal Rules of Civil Procedure, and, thus, the general maritime law applies to the claims of the Briems against Holiday Water Sports.

46.     Under the general maritime law, a party-defendant can be negligent per se where they are or were, at all relevant times, in violation of a statute or regulation that imposes a mandatory duty involving maritime safety or navigation, in what is commonly referred to as the Pennsylvania Rule.

47.     Originally developed in the context of maritime collisions, the Pennsylvania Rule has been expanded to apply to any "statutory violator who is a party to a maritime accident."

48.     Under the Pennsylvania Rule, the burden of establishing liability shifts to the vessel or maritime defendant who is in derogation of the statutory rule to show that this violation could

10

not have been a cause of the accident. Thus, the Rule is not a "rule of liability," but rather it shifts the burden of proof of causation. The presumption of liability, or negligence per se, may be rebutted by the statutory violator only by making a clear and convincing showing that the violation could not have been a possible proximate cause of the accident.

49.     For the <u>Pennsylvania</u> Rule to apply, the claim must be pled as a maritime action, and there must be (1) proof of a violation of a statute or regulation that imposes a mandatory duty; (2) the statute must involve maritime safety or navigation; and (3) the accident or injury was of a nature that the statute was intended to prevent.

50.     In this case, Defendant, Holiday Water Sports, was in violation of section 327.54 of the Florida Statutes. This statute provides:

> **327.54     Liveries; safety regulations; penalty.**
>
> (1) A livery may not knowingly lease, hire, or rent a vessel to any person:
>
> . . .
>
> (e)     When the vessel is equipped with a motor of 10 horsepower or greater, unless the livery provides ***prerental or preride instruction*** that includes, but ***need not be limited to***:
>
> 1.     Operational characteristics of the vessel to be rented.
> 2.     Safe vessel operation and vessel right of way.
> 3.     The ***responsibility of the vessel operator*** for the safe and proper operation of the vessel.
> 4.     ***Local characteristics of the waterway where the vessel will be operated***.
>
> (4)     . . .
>
> (b)     A livery may not knowingly lease, hire, or rent a personal watercraft to any person who has not received instruction in the safe handling of personal watercraft, in compliance with rules established by the commission pursuant to chapter 120.

§ 327.54 (1)(e), (4)(b) (emphasis added).

11

51.    A violation of chapter 327 of the Florida Statutes constitutes negligence per se, as it involves maritime safety or navigation, making the Pennsylvania Rule applicable.

52.    In this case, Holiday Water Sports violated its statutory duty to provide pre-rental or pre-ride instructions as to the complete operational characteristics of the vessel to be rented, the safe vessel operation and vessel right of way, the Briems' responsibilities as vessel operators, and as to proper safety instructions concerning the local characteristics of the waterways where the Briems would be operating the Waverunner.

53.    The only training the inexperienced Briems received from Holiday Water Sports concerned the manner in which to brake and accelerate the Waverunner, and no further training was provided. Certainly, no attempt was made to educate or inform the Briems as to the full operational characteristics of the vessel, nor was complete instruction provided as to the safe operation of the vessel, nor was an explanation provided as to their own responsibilities with respect to operation of the vessel. Most importantly, the Briems were not instructed as to the local characteristics of the waterways, which was of an even greater concern considering the weather conditions of which Holiday Water Sports was fully aware. For all such instructions, the Briems relied upon Holiday Water Sports.

54.    Further, the Briems had contracted for a "guided" tour, and reasonably believed that such guidance would include guidance with respect to the operational characteristics and the safe operation of the vessel, along with guidance as to their responsibilities as vessel operators under the circumstances and as to the local characteristics of the waterways. For all such guidance they relied upon Holiday Water Sports.

55.    The failure to provide pre-rental or pre-ride instructions to the Briems by Holiday Water Sports was a statutory violation of chapter 327 of the Florida Statutes, giving rise to a

presumption of liability of Holiday Water Sports, i.e., negligence per se, which, thereby, shifts the burden of proving that its derogation from the statute could not have been a cause of the accident.

56. As a direct and proximate result of the negligence per se of Holiday Water Sports, Plaintiff, Maria Briem, has suffered and continues to suffer severe bodily injuries, pain and suffering, inconvenience, disability, significant scarring and/or disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the expense of medical and nursing care and treatment.

57. As a direct and proximate result of the negligence per se of Holiday Water Sports, Plaintiffs, Maria Briem and Torsten Briem, have suffered and continue to suffer the pecuniary losses as it relates to the expense of the vacation that was ruined due to the events recited herein.

**WHEREFORE,** Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, demand judgment be entered under Count I, against Defendant, HOLIDAY WATER SPORTS FT MYERS BEACH, INC. a/k/a HOLIDAY WATER SPORTS OF FORT MYERS BEACH, INC., for money damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

## COUNT II

### GENERAL MARITIME LAW NEGLIGENCE OF HOLIDAY WATER SPORTS FOR BREACH OF ITS DUTY OF CARE OWED TO THE BRIEMS

58. Paragraphs 1 through 42 are realleged as though fully set forth herein.

59. Under the maritime law, the elements of negligence are generally the same as in a common law claim. Even if the Pennsylvania Rule were not to apply, the Briems assert that by a preponderance of evidence, Holiday Water Sports breached its obligation of ordinary care under the general maritime law.

60. Defendant, Holiday Water Sports, as owner of the Waverunners in question, owed the Briems, whether they are characterized as passengers, guests or business invitees, a duty of

providing "reasonable care under the circumstances," the circumstances requiring more diligence on the part of the vessel owner with respect to risks that are not normally encountered by passengers, guests, or business invitees in their shoreside lives.

61.    Holiday Water Sports was responsible for providing complete and proper instruction to patrons such as the Briems with respect to the safe operation of the Waverunner.

62.    The failure of Holiday Water Sports to provide such complete and proper instruction breached its obligation of ordinary care to the Briems under the general maritime law.

63.    Holiday Water Sports knew or should have known that sending inexperienced operators out on the watercraft without complete and proper instruction and guidance would lead to the operator and/or passenger of the Waverunner being exposed to, and to sustain, injury.

64.    Further, the Briems certainly did not encounter the dangers of the seas, especially high seas, in their ordinary lives, which is why they paid extra for a guided tour, and Holiday Water Sports certainly had actual or constructive notice of the risk-creating condition posed by the weather conditions. In fact, the notice possessed by Holiday Water Sports of the heightened risks posed on the day of the accident is evidenced by the fact that the tour had been cancelled altogether on the day before and by the fact that an alternate route had to be taken on the day of the accident.

65.    Holiday Water Sports, given the constellation of issues delineated supra, failed to fully inform the Briems of the risks and dangers associated with the operation of the Waverunner.

66.    As a result of its failure to adequately and fully instruct the Briems, Holiday Water Sports was negligent and in violation of its duty of care owed to the Briems under the circumstances under the general maritime law.

67.    By abandoning these inexperienced operators of a Waverunner, particularly in the open ocean, which had been deemed too dangerous for purposes of the tour itself, Holiday Water

Sports created exactly that type of risk of harm that ordinary, prudent, and reasonable care under the circumstances would have prevented.

68.     Once Mrs. Briem sustained injury, Holiday Water Sports failed to respond in any manner with respect to the following:

(1)     failing to rescue Mrs. Briem from the open seas following her injuries;

(2)     failing to assess the nature and severity of Mrs. Briem's injuries; and

(3)     failing to take active steps to ensure that Mrs. Briem receive necessary medical care.

69.     As a result of its failure to adequately assess the dangerous conditions posed by the seas on April 27, 2015, and/or its abandonment of the Briems under the conditions presented, Holiday Water Sports was negligent and in violation of its duty of care owed to the Briems under the circumstances under the general maritime law.

70.     By failing to rescue and assess Mrs. Briem relative to her injuries, and to ensure that she receive the necessary medical care, Holiday Water Sports was negligent and in violation of its duty of care owed to the Briems under the circumstances under the general maritime law.

71.     As a direct and proximate result of the general maritime law negligence of Holiday Water Sports, Plaintiff, Maria Briem, has suffered and continues to suffer severe bodily injuries, pain and suffering, inconvenience, disability, significant scarring and/or disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the expense of medical and nursing care and treatment.

72.     As a direct and proximate result of the general maritime law negligence of Holiday Water Sports, Plaintiffs, Maria Briem and Torsten Briem, have suffered and continue to suffer the

15

pecuniary losses as it relates to the expense of the vacation that was ruined due to the events recited herein.

**WHEREFORE,** Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, demand judgment be entered under Count II, against Defendant, HOLIDAY WATER SPORTS FT MYERS BEACH, INC. a/k/a HOLIDAY WATER SPORTS OF FORT MYERS BEACH, INC., for money damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

## COUNT III

### NEGLIGENCE OF HOLIDAY WATER SPORTS

73.     Paragraphs 1 through 42 are realleged as though fully set forth herein.

74.     Under the maritime law, the United States Supreme Court has stated that where federal maritime laws or regulations do not specifically address a particular issue and do not preempt the regulation of the issue, then a federal court may apply state laws as supplementation of the maritime claim, including certain negligence claims.

75.     Defendant, Holiday Water Sports, was responsible for providing complete and proper instruction to patrons such as the Briems with respect to the safe operation of the Waverunner.

76.     The failure of Holiday Water Sports to provide such complete and proper instruction breached its obligation of ordinary care to the Briems.

77.     Defendant, Holiday Water Sports, knew or should have known that sending inexperienced operators out on the watercraft without complete and proper instruction would lead to the operator and/or passenger of the Waverunner being exposed to, and to sustain, injury.

78.     Further, the Briems certainly did not encounter the dangers of the seas, especially high seas, in their ordinary lives, which is why they paid extra for a guided tour, and Holiday Water Sports certainly had actual or constructive notice of the risk-creating condition posed by the weather conditions. In fact, the notice possessed by Holiday Water Sports of the heightened risks posed on the day of the accident is evidenced by the fact that the tour had been cancelled altogether on the day before and by the fact that an alternate route had to be taken on the day of the accident.

79.     Holiday Water Sports, given the constellation of issues delineated supra, failed to fully inform the Briems of the risks and dangers associated with the operation of the Waverunner.

80.     As a result of its failure to adequately and fully instruct the Briems, Holiday Water Sports was negligent and in violation of its duty of care owed to the Briems under the circumstances.

81.     By abandoning these inexperienced operators of a Waverunner, particularly in the open ocean, which had been deemed too dangerous for purposes of the tour itself, Holiday Water Sports created exactly that type of risk of harm that ordinary, prudent, and reasonable care under the circumstances would have prevented.

82.     Once Mrs. Briem sustained injury, Holiday Water Sports failed to respond in any manner with respect to the following:

   (1)     failing to rescue Mrs. Briem from the open seas following her injuries;

   (2)     failing to assess the nature and severity of Mrs. Briem's injuries; and

   (3)     failing to take active steps to ensure that Mrs. Briem receive necessary medical care.

83.     As a result of its failure to adequately assess the dangerous conditions posed by the seas on April 27, 2015, and/or its abandonment of the Briems under the conditions presented,

Holiday Water Sports was negligent and in violation of its duty of care owed to the Briems under the circumstances.

84.     By failing to rescue and assess Mrs. Briem relative to her injuries, and to ensure that she receive the necessary medical care, Holiday Water Sports was negligent and in violation of its duty of care owed to the Briems under the circumstances.

85.     As a direct and proximate result of the negligence of Holiday Water Sports, Plaintiff, Maria Briem, has suffered and continues to suffer severe bodily injuries, pain and suffering, inconvenience, disability, significant scarring and/or disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the expense of medical and nursing care and treatment.

86.     As a direct and proximate result of the negligence of Holiday Water Sports, Plaintiffs, Maria Briem and Torsten Briem, have suffered and continue to suffer the pecuniary losses as it relates to the expense of the vacation that was ruined due to the events recited herein.

**WHEREFORE**, Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, demand judgment be entered under Count III, against Defendant, HOLIDAY WATER SPORTS FT MYERS BEACH, INC. a/k/a HOLIDAY WATER SPORTS OF FORT MYERS BEACH, INC., for money damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

**COUNT IV**

**NEGLIGENCE OF THE TOUR GUIDE "JACK", FOR ABANDONING
THE BRIEMS ON THE OPEN OCEAN AND LEAVING THE
PAID-FOR "GUIDED" TOUR BEFORE IT HAD ENDED**

87.     Paragraphs 1 through 42 are realleged as though fully set forth herein.

88.     Defendant, the Tour Guide, Jack, had a duty, as a tour guide hired to take the Briems on a guided tour, to act as a reasonably prudent tour guide might under the same or similar circumstances.

89.     The Briems and their friends had contracted and paid for a completely "guided" Waverunner dolphin tour, which was to be provided for by the Tour Guide, Jack, and which was to take place on an alternative route through canals, due to rough weather conditions on the normal tour route. The Briems had chosen and expected to rely on the tour guide due to their inexperience with the safe operation of a Waverunner and the Florida waterways and conditions.  As such, the Tour Guide, Jack, had an obligation to act with reasonable care relative to carrying out his role as guide, particularly under all delineated circumstances.

90.     Defendant, the Tour Guide, Jack, certainly had actual or constructive notice of the risk-creating condition posed by the weather conditions. In fact, the notice possessed by the Tour Guide, Jack, was the fact that an alternate route had to be taken on the day of the accident.

91.     However, when the tour was nearly over, the Tour Guide, Jack, told them that for the remaining 15 minutes of the tour, they could ride alone into the open ocean and make their own way back to shore. The Briems had relied on the fact that they had contracted for a "guided" tour, and expressed concern when the Tour Guide, Jack, left the tour prematurely and abandoned them in the open ocean waters, instructing them to make their own way back to shore.

92.     The Tour Guide, Jack, acted with full knowledge of the Briems' inexperience, the concerns and misgivings expressed by the Briems, and of the potentially hazardous weather conditions, especially for individuals who do not normally encounter such conditions. He was also aware the Briems contracted for a fully guided tour.

93.     Nevertheless, the Tour Guide, Jack, abandoned the Briems in the open ocean waters, endangering them to perils for which they had not been adequately instructed or trained.

94.     As a result of his failure to adequately assess the dangerous conditions posed by the seas on April 27, 2015, and by leaving the Briems in the open ocean, Defendant, the Tour Guide, Jack, was negligent and in violation of his duty of care owed to the Briems under the circumstances.

95.     As a direct and proximate result of the negligence of Defendant, the Tour Guide, Jack, Plaintiff, Maria Briem, has suffered and continues to suffer severe bodily injuries, pain and suffering, inconvenience, disability, significant scarring and/or disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the expense of medical and nursing care and treatment.

96.     As a direct and proximate result of the negligence of Defendant, the Tour Guide, Jack, Plaintiffs, Maria Briem and Torsten Briem, have suffered and continue to suffer the pecuniary losses as it relates to the expense of the vacation that was ruined due to the events recited herein.

**WHEREFORE,** Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, demand judgment be entered under Count IV, against Defendant, TOUR GUIDE LEADER "JACK", for money damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

## COUNT V

### NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION BY HOLIDAY WATER SPORTS

97.     Paragraphs 1 through 42 are realleged as though fully set forth herein.

98.     Under the maritime law, the United States Supreme Court has stated that where federal maritime laws or regulations do not specifically address a particular issue and do not

preempt the regulation of the issue, then a federal court may apply state laws as supplementation of the maritime claim, including certain negligence claims.

99.     When employing tour guides in the operation of its business, Defendant, Holiday Water Sports, has a duty to employ individuals who are competent and duly qualified.

100.     Specifically, Holiday Water Sports had a duty to hire and/or employ competent individuals to carry out its guided tours on behalf of the customers of Holiday Water Sports.

101.     Holiday Water Sports, upon information and belief, hired the Tour Guide, Jack.

102.     Holiday Water Sports breached that duty by failing to hire a tour guide capable of safely and appropriately guiding the Briems through the complete guided tour.

103.     Further, Holiday Water Sports was in charge of training, supervising and retaining the Tour Guide, Jack, with respect to his duties and responsibilities of providing guided tours to customers of Holiday Water Sports.

104.     Holiday Water Sports owed a duty to the tour participants, including Mrs. Briem, to properly supervise and train the Tour Guide, Jack, so that the latter would provide guided tours in a safe and appropriate manner and protect the participants of such tours against unreasonable risk of physical harm during and/or relating to the tour.

105.     Holiday Water Sports breached that duty by failing to properly supervise and train the Tour Guide, Jack, as reflected by his failure to remain with the Briems throughout the entire time-period of the guided tour and allowing such inexperienced operators of the Waverunner to remain in the open ocean, especially given the weather conditions.

106.     As a result of its failure to appropriately hire, train, supervise and/or retain the Tour Guide, Jack, Holiday Water Sports was negligent and in violation of its duty of care owed to the Briems under the circumstances.

107.    As a direct and proximate result of the negligence of Holiday Water Sports, Plaintiff, Maria Briem, has suffered and continues to suffer severe bodily injuries, pain and suffering, inconvenience, disability, significant scarring and/or disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the expense of medical and nursing care and treatment.

108.    As a direct and proximate result of the negligence of Holiday Water Sports, Plaintiffs, Maria Briem and Torsten Briem, have suffered and continue to suffer the pecuniary losses as it relates to the expense of the vacation that was ruined due to the events recited herein.

**WHEREFORE,** Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, demand judgment be entered under Count V, against Defendant, HOLIDAY WATER SPORTS FT MYERS BEACH, INC. a/k/a HOLIDAY WATER SPORTS OF FORT MYERS BEACH, INC., for money damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

## COUNT VI

### VICARIOUS LIABILITY OF HOLIDAY WATER SPORTS

109.    Paragraphs 1 through 42 and 87-96 are realleged as though fully set forth herein.

110.    Under the maritime law, the United States Supreme Court has stated that where federal maritime laws or regulations do not specifically address a particular issue and do not preempt the regulation of the issue, then a federal court may apply state laws as supplementation of the maritime claim, including certain claims of vicarious liability.

111.    Upon information and belief, the Tour Guide, Jack, was employed by Holiday Water Sports.

112.    At all times, the Tour Guide, Jack, was under the supervision, employ, and control of Holiday Water Sports when he committed the acts of negligence delineated herein.

113.    At all relevant times, the Tour Guide, Jack, engaged in the negligent acts described herein while acting in the course and scope of his employment with Holiday Water Sports.

114.    At all relevant times, the Tour Guide, Jack, upon information and belief, was an employee of Holiday Water Sports, and Holiday Water Sports is, thus, vicariously liable to the Briems for the claims brought at law against the tour guide.

115.    At the time of the guided tour in which the Briems participated and for which they had contracted with Holiday Water Sports, the Tour Guide, Jack, was acting as a tour guide on behalf of Holiday Water Sports.

116.    As a direct and proximate result of the negligence by the Tour Guide, Jack, Plaintiff, Maria Briem, has suffered and continues to suffer severe bodily injuries, pain and suffering, inconvenience, disability, significant scarring and/or disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the expense of medical and nursing care and treatment.

117.    As a direct and proximate result of the negligence by the Tour Guide, Jack, Plaintiffs, Maria Briem and Torsten Briem, have suffered and continue to suffer the expense of medical and nursing care and treatment, as well as the pecuniary losses as it relates to the expense of the vacation that was ruined due to the events recited herein.

**WHEREFORE,** Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, demand judgment be entered against Defendant, HOLIDAY WATER SPORTS FT MYERS BEACH, INC. a/k/a HOLIDAY WATER SPORTS OF FORT MYERS BEACH, INC., for money damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate, for its vicarious liability imposed by law.

## COUNT VII

### LOSS OF CONSORTIUM

118.   Paragraphs 1 through 42 are realleged as though fully set forth herein.

119.   Under the maritime law, the United States Supreme Court has stated that where federal maritime laws or regulations do not specifically address a particular issue and do not preempt the regulation of the issue, then a federal court may apply state laws as supplementation of the maritime claim, including supplementation of available elements of damages, if (1) the injured person was not a "seafarer;" (2) the injury occurred in the territorial waters of that state; and if (3) the casualty did not involve a commercial vessel.

120.   At all times heretofore mentioned, Plaintiff, Torsten Briem, was the lawful husband of Plaintiff, Maria Briem.

121.   As the lawful husband of Mrs. Briem, Plaintiff, Torsten Briem, was and is entitled to the love, society, companionship, services, consortium, affection, attention, and support of his wife.

122.   As a result of the aforementioned accident, Plaintiff, Torsten Briem, has been deprived and will in the future be deprived of the love, society, companionship, services, consortium, affection, attention, and support of his wife, and Mr. Briem was otherwise damaged.

123.   As a result of the foregoing, Plaintiff, Torsten Briem, is entitled to recover from the Defendants, for all of the damages which he has suffered and will continue to suffer due to the deprivation of the love, society, companionship, services, consortium, affection, attention, and support of his wife.

124.   As a result of the foregoing, Plaintiff, Torsten Briem, has been damaged in an amount to be proven at trial.

**WHEREFORE,** Plaintiff, TORSTEN BRIEM, demands judgment be entered under Count VII, against Defendants, HOLIDAY WATER SPORTS FT MYERS BEACH, INC. a/k/a HOLIDAY WATER SPORTS OF FORT MYERS BEACH, INC. and the TOUR GUIDE LEADER "JACK", for money damages, costs of suit, pre-judgment interest, and such other relief as this Court may deem just and appropriate.

## SUPPLEMENTATION / AMENDMENT OF THE COMPLAINT

Plaintiffs reserve the right, upon leave of Court after responsive pleadings, or by right under the Federal Rules of Civil Procedure, to Supplement and Amend this Complaint as any further information becomes known or available.

## DEMAND FOR JURY TRIAL

Plaintiffs, MARIA BRIEM and TORSTEN BRIEM, hereby demand trial by jury on all issues so triable.

DATED this 27th day of April 2018.

Respectfully submitted,

By: /s/ Michael R. Jackson
**Michael R. Jackson**
Florida Bar No. 0161632
**Bonnie J. Jackson**
Florida Bar No. 0162272
**JACKSON LAW INTERNATIONAL**
1201 S. Orlando Avenue, Suite 201
Winter Park, Florida 32789
Telephone: 321-972-8820
Facsimile: 321-972-8821
Email: mjackson@jacksonlawinternational.com;
bjackson@ jacksonlawinternational.com

*Attorneys for the Plaintiffs*